### Lulu M. Rider v. William H. Rider.

#### Gen. No. 11,813.

1. ENTIRETY—*when contract transaction construed as.* Where several agreements between the same parties are made at the same time and relate to the same subject-matter, they will be construed together as constituting a single transaction.

2. POWER OF ATTORNEY—*when revocation of, will be enjoined.* Where the owner of stock, for a valuable consideration moving from another, gives a power of attorney to a third party to vote his or her stock for a period of years, and such power is given as a part of a contract transaction which would not have taken place without the execution of such power, a revocation of such power will be enjoined by preliminary injunction and the matters preserved *in statu quo* until a full and final hearing upon the merits may be had.

Appeal from interlocutory order granting injunction. Appeal from the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the March term, 1904. Affirmed. Opinion filed May 26, 1904.

Rider v. Rider.

**Statement by the Court.** This is an appeal from an interlocutory order granting an injunction, on bill filed by appellee against appellant. The bill alleges, in substance, the following: Prior to March 7, 1903, complainant was a shareholder in the Monarch Book Company, an Illinois corporation, doing business in Chicago, the capital stock of which was $100,000 divided into 1,000 shares of $100 each. Just prior to March 7, 1903, the said shares were held as follows: Lincoln W. Walter, 243 shares; Milton Percival, 243 shares; Lida P. Miller, 257 shares; complainant, 243 shares. Lincoln W. Walter is president, Milton Percival vice-president, complainant secretary, and Lida P. Miller treasurer of said company, which offices were held by said persons, respectively, February 10, 1892, and have been ever since said date. Complainant was formerly connected with said company, but severed his connection therewith for some years, and on his return it was agreed by all the shareholders that the shares should be so divided that the number held and owned by complainant and said Walter should be fifty per cent of the whole number of shares, and that the shares owned by said Miller and other shares should be a like fifty per cent, to the end that the balance of power in the company should be thus maintained, and, on this distinct agreement, complainant purchased the stock of a former secretary of the company. Said Miller, Walter and complainant constitute the present board of directors of the company, and they and the present officers of the company were elected at the last annual meeting, February 10, 1903, for one year, and the next annual meeting for the election of directors and officers should take place February 10, 1904. The salary of each of said officers, as fixed by resolution of the board of directors, is $2,500 per annum. The shares of stock are not generally sold on the market; the persons above named are the only shareholders and control the corporation, which is a close corporation. March 7, 1903, differences had occurred between complainant and Lulu M. Rider, his then wife, and she was about to file a bill for divorce, on grounds which

complainant could not controvert, and for the purpose of making provision for her support, and to assure to her such alimony as might be decreed, and to give complainant opportunity to earn a livelihood and sufficient money to pay said alimony, three certain agreements were made simultaneously between complainant and said Lulu M. Rider, which are contained in three separate documents, all dated March 7, 1903, for the purpose aforesaid, and to enable complainant to retain his position as secretary of said company, etc. Copies of said agreements, Exhibits 1, 2 and 3, are attached to and made part of bill. March 7, 1903, complainant owned two hundred and forty-three shares of the stock of the Monarch Book Company, sixty-seven of which were clear of all liens and encumbrances, and the remainder had been pledged to said Walter for certain advances made by him to complainant. Contemporaneously with the execution of the written agreement, Exhibit 1, complainant caused said sixty-seven shares to be transferred to appellant, and a certificate numbered 61 to be issued to her for the same. (Here the bill purports to state the substance of agreements, Exhibits 1, 2 and 3, which will hereafter be referred to.)

The bill, after stating that a power of attorney was executed by defendant to Lincoln W. Walter, as agreed in Exhibit 1, to vote certain stock transferred by complainant to defendant, avers, in substance, as follows: Prior to the execution of the power of attorney, a large number of names was canvassed, and finally defendant suggested Walter, to which complainant agreed. Complainant would not have executed said agreements if said power of attorney had not been executed to Walter, or to some one satisfactory to complainant. Said Walter is president of the company, and a fair, impartial and just person. He has not yet exercised the authority given him by said power of attorney, no meeting of the stockholders having occurred since it was executed, but complainant believes he would exercise it fairly and justly. The stock owned by Walter, together with that he is authorized to vote by said power of attor-

Rider v. Rider.

ney, is fifty per cent of the entire stock of the company, the remainder being owned by Miller and Percival. Percival lives in Philadelphia, and has not, at any time, been active in the management of the company's business in Chicago. Under the circumstances set forth, complainant is the equitable owner of the one hundred shares of stock, sixty-seven shares of which have been transferred to defendant, and thirty-three shares of which have been agreed to be transferred to her, and has right to insist that the power of attorney shall be exercised by said Walter, so long as he shall act in accordance with the spirit and intent thereof, and, if permitted to do so, he would vote the stock in the interest of complainant and defendant, and in such manner as to enable the company to earn dividends on the stock, and to enable complainant to earn his salary. Walter is interested in the stock standing in complainant's name, and also in thirty-three shares in which the defendant is interested, by reason of the same being pledged to him to secure indebtedness of complainant to him, amounting to $4,400, etc. Shortly after the making of said agreements a decree of divorce was entered in the Circuit Court of Cook county, Illinois, divorcing said defendant from complainant, and decreeing that complainant should pay her $75 per month as alimony, so long as she should remain unmarried, which alimony complainant has paid on the first day of every month since the rendition of said decree. Complainant first became connected with said company in 1888, and has so continued, with the exception of a few years, during which few years he established himself in a lucrative business, and only returned to the company after much persuasion, and after the agreement heretofore referred to had been made, by which Walter and he should have half the shares of the stock of the company, so that he might be secure in the position of secretary; that he has been informed and believes that his said position will be rendered insecure unless complainant's and Walter's shares and those which Walter is entitled to vote, under the power of attorney, together shall constitute one-half of the shares of the company. De-

fendant, capriciously, and without cause or legal right, has attempted to revoke said power of attorney, and has given to Walter and complainant written notice of revocation. The revocation annexed to the bill recites that the defendant has no longer full confidence in Walter, and expressly revokes the power of attorney. Complainant has been informed and believes that the attempted revocation is made to secure some other person to vote the stock at the approaching annual meeting to be held February 10, 1904, and to give a power of attorney to vote the shares to a person inimical to complainant and Walter, and that the votes of such person, added to the votes of the other half of the shares, will be used to oust complainant from his position as secretary, and will deprive him of his salary, and prevent him from earning said alimony, which, by the decree aforesaid, he should pay. The bill prays that the attempted revocation be set aside and cancelled, and that the power of attorney to Walter may be declared irrevocable, and that the defendant, Lulu M. Rider, may be enjoined, during ten years from March 7, 1903, from giving to any other person the right to vote said stock, etc. The bill is verified by the affidavit of the complainant.

The agreements referred to in the bill as exhibits 1, 2 and 3 are all dated March 7, 1903. Exhibit 1 is an agreement between Lulu M. Rider of the first part, and William H. Rider of the second part, and is signed, under seal, by both the parties. It recites, in substance, as follows:

Lulu M. Rider is the lawful and absolute owner of 67 shares of the stock of the Monarch Book Company, included in certificate 61, the face value of each share being $100; that William H. Rider is desirous of purchasing the same, and agrees that, in consideration of $6,700, to be paid by him to her, she will sell and he agrees to purchase and pay for said stock as follows:

1. She to first retain, out of the dividends of the stock, an amount equal to five per cent on $6,700, or on such part thereof as remains unpaid on February 1st of each year, as interest.

2. The balance of the dividends to be credited to him by her on the purchase price of $6,700.

Rider v. Rider.

3. When the party of the first part shall have received from the party of the second part $6,700 in lawful money of the United States, in addition to the five per cent per annum interest on the $6,700, or upon such part thereof as remains unpaid from time to time as aforesaid, then the 67 shares of capital stock aforesaid shall be delivered by the party of the first part to the party of the second part, and shall then become absolutely the property of the party of the second part, and the party of the first part shall then have no further interest therein.

4. For the protection of both parties she will deposit the stock with the Chicago Title & Trust Company until the same shall be paid for, but no longer than ten years.

5. Whenever she shall have received from dividends, as aforesaid, $6,700 in excess of the five per cent aforesaid, the Trust Company is authorized to deliver the stock to him. But, if at the end of ten years, the stock shall not be paid for, the Trust Company shall deliver the stock to her, and she shall deliver to him nine-tenths of the amount of stock paid for by him.

6. "It is further mutually agreed by and between the parties to this instrument that the party of the first part will make and execute to Lincoln W. Walter a power of attorney to vote said 67 shares of stock at all stockholders' meetings."

7. If, during the term of this agreement, second party's salary should exceed $3,500 per year, the Monarch Book Company is authorized to pay from the excess, first, all amounts due on any stock of said company held by either party, not then fully paid for, and after such indebtedness is paid the remainder to be applied on the $6,700, the purchase price of said 67 shares.

8. If dividends, in any year during the existence of this contract, shall not amount to five per cent, the deficit is not to be charged against the second party or the shares of stock.

9. It is expressly agreed that there is no obligation on William H. Rider to pay for said 67 shares, except from dividends declared on same.

Exhibit 2 is an agreement between William H. Rider, first party, and Lulu M. Rider, second party, and is, in substance, as follows:

After reciting that he is indebted to her in the sum of $3,300, and is desirous to pay the same, and that he is the

owner of $3,300 of the capital stock of the Monarch Book Company, $2,200 of which is represented by certificate 53, and $1,100 of which, being eleven shares, is included in certificate 54 for twenty-two shares, it is agreed as follows:

1. Said first party assigns to said second party, in full payment of said indebtedness, said stock certificate 53, for 22 shares, and the one-half of said stock certificate 54, for 22 shares, to be held by the second party, her heirs and assigns forever.

2. First party agrees to deliver said stock to second party on conditions hereinafter mentioned, free and clear of liens and incumbrances.

3. It is understood that there is due from first party to Lincoln W. Walter, on said 33 shares of stock, $1,650, with interest at six per cent per annum from February 1, 1902, and that said stock is in the Illinois Trust & Savings Bank, as collateral security for said sum and interest.

4. It is agreed that said stock shall remain where it is until it is paid for.

5. Said second party shall, on February 10th of each year, or oftener if dividends are declared, receive from the Monarch Book Company the first five per cent, or fraction thereof, of dividends earned by said 33 shares; the balance of dividends earned by said shares shall be applied on any indebtedness to Walter which then remains against said 33 shares.

6. Whenever the said indebtedness to Walter of $1,650 and interest shall be fully paid, the 33 shares shall remain in the hands of said trustee as the property of the second party.

7. All dividends on said 33 shares shall be paid to the second party, out of which she shall first retain a sum equal to five per cent on said $3,300, or on such part thereof as shall remain unpaid, and the balance of said dividends on said shares shall be retained by her for her own use, until such time as the excess of dividends over five per cent shall have amounted to $3,300.

8. When the second party shall have received $3,300, and the five per cent interest as provided, if earned as dividends, the said 33 shares shall be delivered to the first party.

9. It is agreed that in case the lien of Walter on the 33 shares shall not be paid for and removed by dividends, as aforesaid, there shall be no obligation on the first party to deliver said stock free and clear of incumbrances.

Rider v. Rider.

10. If the dividends in any year shall not amount to five per cent, such deficit shall not be a charge against the first party.

11. It is agreed there is no obligation on the first party to pay for said 33 shares, except from dividends declared on the stock.

The power of attorney to Walter authorizes him to vote the sixty-seven shares, certificate 61, the twenty-two shares, certificate 53, and the twenty-two shares, certificate 54, expresses full confidence in Walter, recites that she has contracted to sell the one hundred shares to William H. Rider, and that the power of attorney is to continue irrevocable for ten years, unless the stock is sooner paid for, and provides that in the event of Walter's death or inability to act, Ira B. Saunders shall succeed him as attorney, with the same powers. No answer was filed to the bill. The cause was referred to a master to hear application for a temporary injunction on the bill and certain affidavits, and report to the court his conclusions and recommendations. The master acted in accordance with the order of reference and recommended that an injunction issue, which recommendation the court acted on.

W. O. Johnson, William F. Baker and Bulkley, Gray & More, for appellant; George L. Paddock, of counsel.

Felsenthal & Foreman, for appellee.

Mr. Presiding Justice Adams delivered the opinion of the court.

The main question to be decided on this appeal is, whether the power of attorney from appellant to Lincoln W. Walter is revocable, appellant contending that it is, and appellee the contrary. The solution of this question, as counsel for the parties in their arguments impliedly concede, depends mainly on the construction to be given to the agreements between the parties. In construing these agreements we must place ourselves as nearly as possible in the position of the parties, and the agreements having been made at the same time, and referring to the same subject-matter, must

be construed together, as if constituting a single instrument. These propositions are fully sustained in Wilson v. Roots, 119 Ill. 379, 386, and cases cited. It is alleged in the bill, and not contradicted by answer, or otherwise, that March 7, 1903, when the agreements were made, complainant was the owner of 243 shares of the capital stock of the Monarch Book Company. The appellant, in her affidavit filed in opposition to the application for an injunction, while claiming that she was the owner of 100 shares of said capital stock, says that appellee is the owner of 143 shares of said stock. It is also alleged in the bill, and not denied, that the agreements were made "for the purpose of making suitable provision for the support and maintenance of said Lulu M. Rider, and to assure to said Lulu M. Rider such alimony as might thereafter be decreed by the court" in the divorce suit which she contemplated, and which appellee, in substance, says he could not successfully defend. It is also averred in the bill, and not denied, that "contemporaneously with the making of said agreement, exhibit 1, which is in regard to sixty-seven shares of the stock included in stock certificate 61, complainant caused to be transferred to said Lulu M. Rider, and to be issued to her, sixty-seven shares of the capital stock of said Monarch Book Company, being certificate No. 61." In view of these allegations in the sworn bill, which are not denied, it must be assumed that appellee, prior to and at the time of the agreements in question, was the owner of 243 shares of the capital stock of the Monarch Book Company, sixty-seven shares of which were free from liens and incumbrances, and that he caused said sixty-seven shares to be transferred to appellant, and a stock certificate therefor to be issued to her. While by the transfer and the issue of the certificate to her she held the legal title to the sixty-seven shares, she was not, as her counsel contend, the absolute and beneficial owner of the stock. This is evidenced by the agreement of the parties in respect to the sixty-seven shares. If appellant were the absolute owner of the stock she would, very clearly, be the owner of and entitled to all dividends de-

Rider v. Rider.

clared on it, and would be entitled to the possession of the certificate, and to sell the stock for what it would bring in the market. But, by the agreement, she is limited as to the amount of the dividends which she may receive and apply to her own use, viz: five per cent on $6,700, and is bound to apply the excess over said five per cent, if any, to appellee's credit on the agreed purchase price of the stock, and, in addition, the stock is to be deposited with a trust company for ten years, unless sooner paid for, and it is only to be paid for from the excess of dividends over five per cent on the purchase price. If at the end of ten years the stock shall not be fully paid for, it is to be delivered to appellant, and she is to deliver to appellee an amount of the stock equal to ninety per cent of the amount paid, although such amount may have been paid from dividends, which, if she was the actual owner, would have belonged to her. It is too plain to require argument that appellant, when she executed the agreement in respect to the sixty-seven shares, did not consider herself the absolute and sole owner of the shares. The agreement is evidence of the truth of the averment in the bill, that appellee was the owner of the shares, and caused them to be transferred to appellant and a stock certificate for them to be issued to her. Considering the transfer of these shares to appellant, and the agreement between the parties in respect to them together, and as if contained in a single instrument, the transaction is in the nature of a mortgage from appellee to appellant of the stock, conditioned that she may receive to her own use an amount of the dividends earned by the stock equal to five per cent on $6,700, the excess of dividends over said five per cent to be retained by appellee until such time as such excess shall amount to $6,700, when the stock is to be delivered to appellee by the trust company. But, if at the end of ten years such excess shall not amount to $6,700, appellant is to have the stock, less an amount of it equal to ninety per cent of the excess of dividends received by appellant, over five per cent on $6,700, which last amount of the stock is to be delivered to ap-

pellee. Appellee, as the actual and equitable owner of the sixty-seven shares of stock, to such extent, and who will be entitled to a retransfer of the same, if, within ten years the amount of $6,700 shall have been received by appellant, in excess of said five per cent, or if said sum of $6,700 shall have been otherwise paid to appellant, is clearly interested in the stock, and, consequently, interested in having it voted so as best to promote his interest and that of the company. He is the owner of the thirty-three shares which are the subject-matter of the agreement, exhibit 2. Those shares have never been transferred to appellant, and are only to be transferred to her on fulfillment of the condition in the agreement specified. The shares were, at the time of the execution of the agreement, held by the Illinois Trust & Savings Bank, as collateral security for an indebtedness of appellee to Lincoln W. Walter, and, by the express terms of the agreement, were there to remain till said indebtedness should be paid from dividends on the stock received by appellee in excess of five per cent of the dividends declared, and until, after payment of said indebtedness, appellant should have received, from such excess of dividends, the sum of $3,300. Appellee, as the owner of the stock, had the right to vote it, while it remained on the company's books in his name, and if the $3,300 should be paid to appellee, from said excess of dividends over five per cent, plus the indebtedness to Walter, or by actual payment of $3,300 by appellee to appellant, he would be entitled to have the certificates of the stock delivered to him. It is true that, by the terms of the agreement, he is not obliged to pay for the stock except from dividends, but he has legal right to pay otherwise, if he so chooses. This agreement, therefore, is, like exhibit 1, in the nature of a mortgage, and subject to appellee's right of redemption.

Appellee being interested in the entire 100 shares of stock, as above stated, and appellant being also interested therein, and neither being willing that the other should vote the stock, it was agreed between them that Lincoln W. Walter should vote it, and that a power of attorney should

be executed to him for that purpose, and this was accordingly done, as part and parcel of their agreement. If the execution of the power of attorney had been solely for the benefit of appellant, and she had the sole interest, she might revoke it; but it was executed for the benefit of both parties, each having an interest. The legal title to the sixty-seven shares having been transferred to her and a stock certificate therefor issued to her by the company, she would have the right to vote said shares were it not for the agreement, and the legal title to the other thirty-three shares being in appellee, he would have the right to vote those shares, were it not for the agreement. Standing as they did in a relation to each other in the nature of mortgagor and mortgagee, and apparently anticipating that there might arise some conflict in their respective interests, appellee was not willing that appellant should vote the sixty-seven shares, nor she. that he should vote the other thirty-three shares. It was for his protection that the sixty-seven shares should be voted by an impartial third person, and for hers that the thirty-three shares should be voted by such person. The appellee, in his bill, avers that he would not have executed the agreements, if the power of attorney had not been executed to Walter, or to some other person equally satisfactory to himself, and we are inclined to the view that neither of the parties would have executed the agreements without the execution of the power of attorney. It appears by the bill that the question as to who should be appointed attorney was discussed by the parties, and that appellant herself suggested Walter. We regard the provision for the appointment of an attorney to vote the stock, and the appointment itself, which was made simultaneously with the agreement to appoint, as material parts of the agreement. In Bonney v. Smith, 17 Ill. 531, the court, after defining a power coupled with an interest, say : " Another class of powers is, when they are executed upon a valuable consideration, and to operate as a transfer, mortgage or security to another; although the power can only be executed in the name of the principal," citing

authorities. In the present case the transfer to appellant of the sixty-seven shares and the agreement to transfer to her the other thirty-three shares, constituted a sufficient consideration for her agreement to execute, and her execution of the power of attorney; and the power was executed not only as security to her, but as security to appellee that the stock would be properly voted. The court cites, among other authorities, Story on Agency, 9th ed., sec. 477. The author says : " But, where an authority or power is coupled with an interest, or where it is given for a valuable consideration, or where it is a part of a security, there, unless there is an express stipulation that it shall be revocable, it is, from its own nature and character, in contemplation' of law, irrevocable, whether it is expressed to be so upon the face of the instrument conferring the authority, or not. Thus, for example, if a power of attorney to levy a fine is executed, as a part of a security to a creditor, the power is irrevocable. So, if a letter of attorney to sell a ship is taken as a security upon a loan of ₜmoney, it is irrevocable. So, if the principal assigns all his effects for the benefit of his creditors, and gives the assignee a power of attorney to collect and receive all debts and outstanding claims, the power is irrevocable. So, if a power of attorney to sell lands is given to a creditor to pay his debts out of the proceeds of the sale, the power is irrevocable. So, a remittance to an agent of money or goods, to be delivered to a creditor in discharge of his debt, is irrevocable after the creditor has assented thereto, and signified his assent to the agent. The ground of this doctrine is that a party shall not be at liberty to violate his own solemn engagement, or to vacate his own security by his own wrongful act; for that would be to enable him to perpetrate a fraud upon innocent persons, who have placed implicit confidence in him, which is against the clearest principles of justice and equity. But a power of attorney, although irrevocable by the party, and although founded upon a valuable consideration, or given as a security, is nevertheless, as we shall presently see, revoked by the death of the party, unless it be also coupled with an interest."

In Hunt v. Rousmanier, 8 Wheat. 174, cited by counsel for appellant, the court, while holding that the power of attorney given by Rousmanier to Hunt was revoked by the death of the former, said that Rousmanier, while living, could not have revoked it, evidently because it was given for a valuable consideration, and as a security to Hunt. The case is cited by Mr. Justice Story in support of the text above quoted.

Lincoln Walter is not a party to the suit, therefore no question arises as between appellant and him, but only as between appellant and appellee; and while as between appellant and Walter, the latter might not be able successfully to defend against the revocation of the power, a different question is presented as between appellant and appellee. We are not inclined to the view that it is necessary to appear that the power conferred on Walter must be coupled with an interest in the subject-matter of the power, in order to render it irrevocable as to appellee. The question here is whether appellee was equitably entitled, under all the circumstances, to a temporary injunction to restrain appellant from violating the contract, until such time as the court could hear the cause on its merits. Story, in the section above quoted, says : " So, if the principal assigns all his effects for the benefit of his creditors, and gives the assignee a power of attorney to collect and receive all debts and outstanding claims, the power is irrevocable," citing Walsh v. Whitcomb, 2 Esp. 565. In that case Walsh, being insolvent, had made to one Barker a general assignment, and, at the same time, executed to him a power of attorney to collect the debts due him for the benefit of his creditors, with power of substitution. Barker, in pursuance of the power of substitution, executed authority to one Hinman, who collected and receipted for a debt due from Whitcomb to Walsh. Walsh, subsequently to the execution of the power of attorney to Barker, gave a power of attorney to another person, who applied to Whitcomb for payment of his debt to Walsh, and refused to recognize Hinman's receipt, and suit was brought in Walsh's name, the plaintiff contending that the power of

attorney to Barker was revocable, but the court held the contrary. It will be observed that the person contending for the irrevocability of the power of attorney was not the grantee of the power, but a debtor of the grantor, who set it up in support of his defense of payment. "The sole object of an interlocutory injunction is to preserve the subject in controversy in its then condition, and, without determining any questions of right, merely to prevent the further perpetration of wrong, or the doing of any act whereby the right in controversy may be materially injured or endangered." High on Injunctions, 3rd ed., sec. 4. See also ib., sec. 11.

The bill in this case was filed January 27, 1904, and the annual meeting for the election of officers and directors of the Monarch Book Company was to occur the tenth of the next February. We think it apparent from the record before us, that appellant is somewhat hostile in her feelings towards appellee, at least in regard to the subject-matter of this suit, and we also think it apparent that, had not the temporary injunction been granted, the stock in question might have been voted in a manner prejudicial to appellee, and which might have resulted in damage to him which could not have been readily estimated, if at all. Under the circumstances we cannot say that the court erred in granting the temporary injunction. On the contrary, we think it was the exercise of reasonable precaution on the part of the court to preserve matters in *statu quo* by injunction, till there could be a full and final hearing on the merits. We have carefully read and considered the argument of appellant's counsel, and the questions discussed therein, but do not deem it necessary, on this appeal, to refer to all the questions discussed by counsel. In affirming the injunction order, it must be understood that we hold, merely, that as the matter was presented to the chancellor, he did not err in granting the interlocutory injunction. Whether the record is such as to entitle appellee to the permanent relief prayed, is a question not before us.

The decree will be affirmed.

*Affirmed.*